**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Brunett & Esnard IP, LLC | ) | Case No.: 24-cv-01137 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Judge: Hon. Nancy L. Maldonado |
| | ) | |
| The Partnerships and Unincorporated | ) | Magistrate: Hon. Young B. Kim |
| Associations Identified in | ) | |
| Schedule "A", | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S REVISED _EX PARTE_ MOTION FOR ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) ASSET RESTRAINING ORDER, (3) EXPEDITED DISCOVERY ORDER, AND (4) SERVICE OF PROCESS BY EMAIL**

# TABLE OF CONTENTS

I.    INTRODUCTION...............................................................................................1

II.    STATEMENT OF FACTS...................................................................................2

      A.    Plaintiff's Intellectual Property..................................................2

      B.    Defendants' Illegal Activities......................................................3

III.    ARGUMENT.......................................................................................................4

      A.    This Court Has Jurisdiction Over the Parties and Subject Matter.........................5

      B.    A Temporary Restraining Order Is Customary and Appropriate ...........................6

      C.    Standard for Temporary Restraining Order and Preliminary Injunction...............8

      D.    Plaintiff Will Likely Succeed on the Merits................................9

          i.    Defendants Infringe the '909 Patent…........................9

          ii.    The '909 Patent is Valid............................................10

      E.    Plaintiff Will Be Irreparably Harmed and There Is No Adequate Remedy at Law..................................................11

      F.    The Balancing of Harms Tips in Plaintiff's Favor.................................11

      G.    Issuance of the Injunction Is in the Public Interest..............................12

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.........................................14

      A.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Intellectual Property is Appropriate................................................14

      B.    An Order Preventing the Fraudulent Transfer of Assets Is Appropriate..............15

V.    PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY.......................................16

VI.    SERVICE OF PROCESS BY EMAIL AND PUBLICATION IS WARRANTED IN THIS CASE..................................................18

VII.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.........................................22

VIII.    CONCLUSION..................................................................................................23

## CASES

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992)..............................................8, 9

*Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. App'x
964 (Fed. Cir. 2002)……………………………………………………………………...10

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007)…………….…15

*Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633 (Fed. Cir. 2015)……………..……….13

*Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014)…………………………16

*Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701 (Fed. Cir.
1997)…………………………………………………………………...……………………...11

*Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003)…………………………….10

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065 (E.D. Wis.
2007)..........................................................................................................................................22

*Cal. Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp. 640 (D.R.I. 1992)……...12

*Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636 (E.D.N.Y. 1994).....................14

*Chanel, Inc. v. Paley*, No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished).........23

*Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished)...........23

*Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012)
(unpublished)...............................................................................................................6, 20, 22

*Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist.
LEXIS 10958 (N.D. Ill. Jan. 19, 1990)……………………………………………………..12

*Deckers Outdoor Corp. v. Does 1-55*, No. 1:11- cv-00010 (N.D. Ill. Feb. 3, 2011)
(unpublished)...........................................................................................................................7, 20

*Deckers Outdoor Corp. v. Does 1-55, et al.*, No. 1:11-cv-00010, (N.D. Ill. Oct. 14, 2011)...........6

*Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv- 07970 (N.D. Ill. Nov. 15, 2011)
(unpublished)...........................................................................................................................7, 20

*Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012)
(unpublished).......................................................................................................................7, 20, 22

*Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012)
(unpublished).................................................................................................................7, 20, 22

*Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708 (N.D. Ill.
2010)...............................................................................................................................................5

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000).........................................9

*Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010)
(unpublished)............................................................................................................................7, 20, 22

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000).........................................7

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)....16

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980)......................................................................17

*Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009)
(unpublished).................................................................................................................................23

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453 (7th Cir. 2010).........................................22

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999)..............................22

*Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010).............................................................6

*In re LDK Solar Secs. Litig.*, 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008)................................21

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009)..............................................21

*In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979)........................................................................7

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan.
30, 2008).........................................................................................................................................20

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995)...........................15

*Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)........................................8

*MacLean- Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414
(N.D. Ill. Dec. 1, 2008)..................................................................................................................20

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26,
2007)................................................................................................................................................21

*National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113 (N.D. Ill. 1990)......................13

*Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished).......6, 19, 22

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380 (1978)...................................17

*Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326 (Fed. Cir. 2005)…………………………………....9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)………………………………………...…10

*Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135 (N.D. Iowa 2003)………………………………………………………………………………………………..16

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004).....20, 21

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002)..................................11

*Purdue Research Found. v. Sanofi- Sythelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003).......................5

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989).......................................................22

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992)................................15

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874 (N.D. Ill. 2015).................................................................................................................................................8

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)....................................19, 20

*Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011)………………………11

*Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983)…………………12

*The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011) (unpublished)...................................................................................................................................7, 22

*The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished)................................................7, 20

*Titan Tire Corp. v. Case new Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009)……………...9, 10

*Tory Burch LLC v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012).................7, 20, 22

*Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB (S.D.N.Y. January 4, 2011) (unpublished)...........................................................................................................7

*Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012)........7, 19, 22

*Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029 (N.D. Ill. 2001)......................7

*True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012)
(unpublished)..............................................................................................................6, 19, 22

*True Religion Apparel, Inc. v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011)
(unpublished)...........................................................................................................................22

*TWM Mfg. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986)...............................................16

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001)...............................................8, 12

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421 (7th Cir. 2010).......................................5

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)...............17

*z4 Techs., Inc. v. Microsoft Corp.*, 2006 U.S. Dist. LEXIS 58374 (E.D. Tex. 2006), aff'd, 507
F.3d 1340 (Fed. Cir. 2007)...............................................16

## STATUTES

28 U.S.C. §1331..............................................................................................................5

28 U.S.C. §§1338(a)-(b)...................................................................................................5

28 U.S.C. § 1391..............................................................................................................5

35 U.S.C. § 1...................................................................................................................5

35 U.S.C. § 171................................................................................................................10

35 U.S.C. § 271(a)............................................................................................................9

35 U.S.C. § 282................................................................................................................10

35 U.S.C. § 283................................................................................................................8, 14

35 U.S.C. § 284................................................................................................................16

Fed. R. Civ. P. 26(b)(2)....................................................................................................17

Fed. R. Civ. P. 4(f)(3).................................................................................................*passim*

Fed. R. Civ. P. 65............................................................................................................17

Fed. R. Civ. P. 65(b).....................................................................................................7, 14

Fed. R. Civ. P. 65(d)(2)(C)...........................................................................................14, 17

## MEMORANDUM OF LAW

### I.     INTRODUCTION

Plaintiff, Brunett & Esnard IP, LLC, brings this action against Defendants, as identified in Schedule A of the Complaint (filed under seal Dkt. #4) (collectively, the "Defendants") for patent infringement.  As alleged in the Complaint, Plaintiff owns U.S. Patent No. 9,661,909 for "Facial Hair Shaping Tool" and attached as Exhibit 1 of the Complaint ("the '909 Patent").  The Defendants are illegally promoting, copying, manufacturing, advertising, marketing, distributing, offering for sale, and selling products that infringe the '909 Patent (hereafter "Accused Products") through various websites/webstores designed to mislead consumers that the products sold are genuine products.

The Defendants use online merchant platforms to virtually peddle to unknowing consumers goods that are low-quality, unlicensed counterfeits.  Defendants attempt to avoid liability by concealing their identities and true nature of their criminal counterfeiting operation by utilizing pseudonyms and failing to disclose that they are not selling legitimate goods but instead are offering substandard and unlicensed goods.  Plaintiff is forced to file this action to combat Defendants' illegal counterfeiting of the Plaintiff's goods and infringement of the '909 Patent, as well as to protect unknowing consumers from purchasing low-quality counterfeits over the Internet through the Defendants.

Defendants directly target their unlawful business activities towards consumers in Illinois and cause harm to Plaintiff's business and interests within the Northern District of Illinois, and have caused and will continue to cause irreparable injury to Plaintiff.  Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using Plaintiff's own marketing images in their webstore product listings websites to sell their goods.  Defendants should not be

permitted to continue their unlawful activities in trading on the goodwill and patent rights of the Plaintiff to sell cheap knock-offs to unsuspecting consumers within Illinois and the nation.

There are common issues of fact among all Defendants. The Defendants are all selling the same accused product and upon information and belief are sourcing the accused product from an unknown manufacturer. See Exhibit 3 and Exhibit 4 of the Complaint (Dkt. No. 4-1 and 4-2). As such, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use infringing products in the same transaction, occurrence, or series of transactions or occurrences.

Therefore, Plaintiff respectfully requests that this Court issue, *ex parte*, (1) a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale, and profiting from the sale of Plaintiff's patented product; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an order temporarily restricting transfer of Defendants' assets to preserve Plaintiff's rights to an equitable accounting; (4) an order for expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of counterfeit Plaintiff products and Defendants' financial accounts; and (5) an order allowing service of process by electronic mail.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Intellectual Property

Brunett & Esnard IP, LLC ("Plaintiff") is a company that develops, designs, manufactures, and sells innovative self-grooming products. See Declaration of Joshua Esnard at ¶ 2. Plaintiff owns the '909 Patent which cover Plaintiff's Beard Bro grooming tool. See Declaration of Joshua Esnard at ¶¶ 3, 12.

2

Plaintiff has expended considerable resources developing, designing, advertising, marketing, and promoting the Beard Bro product and these efforts have resulted in substantial sales for Plaintiff and recognition of the quality of Plaintiff's products by consumers. *See* Declaration of Joshua Esnard at ¶¶ 6, 11.

**B.     Defendants' Illegal Activities**

Defendants almost exclusively advertise and offer to sell the Accused Products on the infringing Amazon.com, DHGate, ebay, Temu, and Wish websites by failing to disclose that their goods are unlicensed knock-offs so that consumers are unaware that they are not buying genuine Beard Bro products. *See* Declaration of Joshua Esnard at ¶ 18. Plaintiff reviewed and confirmed that imitation knock-offs were being offered for sale to residents of the United States and the State of Illinois. Declaration of Joshua Esnard at ¶ 14. Plaintiff also visited each of the Infringing Webstores and confirmed that Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to sell the Accused Products. Declaration of Joshua Esnard at ¶ 14. Unknowing customers mistakenly believe the Infringing Webstore listings to be authorized listings, outlet stores, or wholesalers selling genuine Beard Bro products. The fact that the physical design of the product is shared by large portions of the Defendants indicates a common manufacturer supplying these counterfeiters with product.

Due to the nature of the Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill that have been meticulously cultivated among the consuming public by the Plaintiff. *See* Declaration of Joshua Esnard at ¶ 8. Further, Plaintiff's goodwill and reputation are irreparably damaged when inauthentic Beard Bro products like the Accused Products are sold when they are not authorized, produced, or manufactured by the Plaintiff. *Id*. It is difficult to ascertain or calculate the extent

3

of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence. *Id*.

Counterfeiters, like Defendants, take away the Plaintiff's ability to control the nature and quality of the products sold, as well as consumer expectations regarding the goods' quality and fitness for a particular purpose and thereby further irreparably harm Plaintiff through their Defendants' illegal sale of the Accused Products. *Id.* at ¶ 18. Loss of quality control over goods identical to the Beard Bro product and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. *Id*. The estimated total value of the Defendants' collective infringing sales and promotion of Counterfeit products is thousands of units amounting to at least three hundred thousand dollars in lost revenue. Declaration of Joshua Esnard at ¶ 15.

Acting in concert, Defendants employ certain tactics to conceal their identities, such as utilizing common logistics, identical packaging, as well as the full scope of their counterfeiting operation. These efforts make it virtually impossible for Plaintiff to learn Defendants' true identities. These kinds of Defendants, namely those that fence counterfeit goods online, use judicial notice to abscond with their ill-gotten profits beyond the effective reach of rights owners seeking to enforce their rights.

The Defendants have infringed, and continue to infringe, the '909 Patent by selling the Accused Products. The Accused Products infringe at least Claim 1 of the '909 Patent. The Accused Products include all elements of Claim 1 of the '909 Patent. See Declaration of Kevin Keener at ¶ 13, Exhibit 3 to Declaration of Kevin Keener.

### III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff. To stop Defendants' sale of the Accused Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among

4

other things, the freezing of Defendants' assets and Webstores.  Without the relief requested by

Plaintiff's instant Motion, Defendants' illegal activities will continue unabated, and Plaintiff and

consumers, including those in the Northern District of Illinois, will suffer irreparable harm.

### A.    This Court Has Jurisdiction Over the Parties and Subject Matter

This Court has original subject matter jurisdiction over the claims in this action pursuant

to the provisions of the Patent Act, 35 U.S.C. §1 *et seq.*, 28 U.S.C. §§1338(a)-(b), and 28 U.S.C.

§1331.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants

directly target business activities toward consumers in Illinois and cause harm to Plaintiff's

business within the Northern District of Illinois.  Each Defendant targets Illinois residents and

has offered to sell, and on information and belief, has sold and continues to sell his/her products

to consumers within the State of Illinois.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a

*prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as

true and any factual determinations should be resolved in its favor.  *See uBID, Inc. v. GoDaddy*

*Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-*

*Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has

met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless

proved otherwise by defendants' affidavits or exhibits.").

Furthermore, Illinois courts regularly exercise personal jurisdiction over websites

offering for sale and selling infringing and counterfeit merchandise to Illinois residents over the

Internet.  735 ILCS 5/2-209(a)(2); *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab,*

*LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is

to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-

arm statute. Intellectual property infringement takes place in the state of the infringing sales ... for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling products to Illinois residents); *Deckers Outdoor Corp. v. Does 1-55, et al.*, No. 1:11-cv-00010, (N.D. Ill. Oct. 14, 2011) (personal jurisdiction properly asserted against defendants who offered to sell and sold counterfeit products to Illinois residents through an Internet website).

Through at least the fully interactive commercial Internet Websites and Webstores operated by each Defendant, each of the Defendants has targeted and solicited sales from Illinois residents. Declaration of Joshua Esnard at ¶ 14; Declaration of Kevin Keener at ¶ 5. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### B.    A Temporary Restraining Order Is Customary and Appropriate

In cases like this one, Courts now regularly issue temporary restraining orders due to the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for counterfeiting. *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Granting *ex parte* Temporary Restraining Order); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012); *Tory Burch LLC v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv- 07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor*

*Corp. v. Does 1-55*, No. 1:11- cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB (S.D.N.Y. January 4, 2011) (unpublished); *The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011)(unpublished); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *see also, Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2000); *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (Moran, J.); and *In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

Here, the Defendants fraudulently promote, advertise, offer to sell, and sell goods the Accused Products in violation of the rights granted by the '909 Patent. Declaration of Kevin Keener at ¶ 12. In the absence of a temporary restraining order without notice, Defendants can and likely will sell their remaining collection of Accused Products and will do so by modifying content, changing hosts, and moving any assets from U.S.-based accounts, including Amazon, Internet banking, and payment system accounts.

As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

### C.       Standard for Temporary Restraining Order and Preliminary Injunction

This Court is authorized to issue injunctive relief in this case under Section 283 of the Patent Act which provides, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874, 877 (N.D. Ill. 2015) (citing *Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Ty, Inc.*, *supra* at 895. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in "the sliding scale approach" -- the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896.

8

D.     **Plaintiff Will Likely Succeed on the Merits**

To establish a likelihood of success on the merits of its patent infringement claims,

Plaintiff "must show that it will likely prove infringement, and that it will likely withstand

challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566

F.3d 1372, 1376 (Fed. Cir. 2009).

i.     Defendants Infringe the '909 Patent

The greater the movant's likelihood of succeeding on the merits, the less the balance of

harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th

Cir. 2000).

A defendant is liable for patent infringement if it, "without authority makes, uses, offers

to sell, or sells any patented invention, within the United States or imports into the United States

and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a). "A determination

of infringement is a two-step process. The court must (1) construe the asserted claims and then

(2) compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC

v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citations omitted). In comparing utility patent

claims to an accused product, a patent owner must prove that "the accused device contains each

limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs.,

Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (citations omitted).

All of the terms in the claims of the '909 Patent should be construed according to the

definitions provided by the applicant in the specification, or if not explicitly defined, according

to their ordinary meanings as understood by a person having ordinary skill in the art. *See Phillips

v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Claim #1 of the '909 Patent is construed to cover a facial hair shaping tool with a body

having a straight first side, an elongated bottom end, a truncated second side, and a curvilinear

central section; the first side, bottom end, and curvilinear section each having a tapered edge; with a plurality of markers mirrored on two sides of the body; the tool being configured to conform to a neckline, jawline, and beardcheek line of an adult user. See Declaration of Kevin Keener at ¶ 11.

The Accused Products infringe at least claims 1 of the '909 Patent. See Declaration of Kevin Keener at ¶ 12, Exhibit 3 to Declaration of Kevin Keener. As established in the evidence before the Court, Plaintiff is likely to succeed on its claims that Defendants infringe the '909 Patent.

        ii.    <u>The '909 Patent is Valid</u>

An issued United States patent is given a statutory presumption of validity. See 35 U.S.C. §§ 171, 282; *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. App'x 964, 983 (Fed. Cir. 2002). A trial court can deny a preliminary injunction if it "concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit." *Titan Tire*, 566 F.3d at 1379 (Fed. Cir. 2009). The '909 Patent is entitled to a presumption of validity under the law. Furthermore, Plaintiff will likely withstand any challenge to the validity of the '909 Patent. Plaintiff is not aware of any evidence that would anticipate the claims of the '909 Patent or render those claims obvious. Therefore, Plaintiff is likely to succeed on the merits of the patent infringement claim against Defendants.

**E.    Plaintiff Will Be Irreparably Harmed and There Is No Adequate Remedy at Law**

Irreparable harm is presumed in patent infringement cases where a clear showing of patent validity and infringement has been made. *See Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent

rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.") (citations omitted).

Plaintiff will be harmed by its loss of exclusive patent rights, loss of market share that may not be recovered, and damage to Plaintiff's goodwill and reputation. Additionally, Plaintiff's loss of goodwill and reputation due to the diversion of consumers to purchasing the Accused Products will result in an irreparable and incalculable loss to Plaintiff. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

Defendants are selling products identical to Plaintiff's Beard Bro product and infringe the '909 Patent. Furthermore, the Defendants are foreign entities whose true identities are unknown. Therefore, any monetary damages may be difficult to collect or is likely to not be collected. Therefore, injunctive relief is the only available relief at this time. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("[A]ll three defendants are foreign corporations and [ ] there is little assurance that [plaintiff] could collect monetary damages.") (citations omitted).

### F.    The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895.

The balancing of harms tips decidedly in the Plaintiff's favor. As willful infringers, Defendants are entitled to little equitable consideration. Plaintiff's reputation will be harmed if Defendants are allowed to continue to import and/or sell the Accused Products because Plaintiff

will be unable to effectively police the market and enforce its intellectual property rights. *See Cal. Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp. 640, 647 (D.R.I. 1992) ("Denial of the motion for injunctive relief, therefore, would cause considerable harm to [the patentee's] reputation and threaten its market position. . . . Accordingly, the Court finds that the potential harm to [the patentee] outweighs the potential harm to [the defendant].").

Further, to the extent Defendants would be harmed at all by an injunction, that harm is far outweighed by the immeasurable damage that would be done to the Plaintiff if Defendants were to divest themselves of the counterfeit Accused Products in Defendants' possession, both making some of the Plaintiff's most significant remedies futile and potentially depriving the Plaintiff of the assets generated from the sale of infringing products. Therefore, the balance of harms favors the Plaintiff.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of infringing Accused Products in violation of the '909 Patent. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### G. Issuance of the Injunction Is in the Public Interest

Public policy favors protection of the right secured by valid patents. *Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990) (*citing Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). Additionally, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (citations omitted). The grant of an injunction would further the public's confidence in the patent and judicial system and provide incentives for inventors and

12

corporations to continue developing innovative products and patenting new ideas without the fear they will be unable to stop potential infringers.

Moreover, an injunction will not harm the public because the Beard Bro product protected by the '909 Patent is not the sole type of grooming product available and other products are available for purchase that do not infringe the '909 Patent. The public will be able to purchase these other non-infringing products, despite an injunction against the Defendants. *See National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (granting TRO; "If an injunction makes the [defendant's product] unavailable, the public has plenty of substitutes, including [plaintiff's products].").

Also, the injury to the public is obvious and readily apparent, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Defendants utilize Plaintiffs own marketing images to offer the Accused Products for sale. The public has the right not to be confused or defrauded as to the source of the goods offered by Defendants. Unless Defendants' infringing acts are enjoined, the public will continue to be confused and misled by Defendants' conduct.

For all of these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance to the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

The Plaintiff has sufficiently proven all four elements required to establish the necessity of a preliminary injunction. As described above, if Defendants are given formal notice of the Plaintiff's request for injunctive relief, they are the sorts of defendants who would likely hide,

13

move, or destroy evidence. *See Century Home Entmt. Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant ex parte orders of seizures . . . Plaintiff need not show that a particular defendant would not adhere to a TRO but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity").

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Finally, under FED. R. CIV. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries, online marketplaces, and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

## A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Intellectual Property is Appropriate

Plaintiff requests an order requiring the Defendants to immediately cease all infringement of the '909 Patent, including the sale of Accused Products on or in connection with all of Defendants' websites, webstores, or listings. Such relief is necessary to stop the ongoing harm to the Plaintiff and to prevent the Defendants from continuing to benefit from their illegal infringement of the '909 Patent. The need for *ex parte* relief is magnified in today's global economy where counterfeiters, infringers, and other nefarious tortfeasors can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant websites used to distribute counterfeit or infringing products. A Temporary Restraining Order facilitates a just outcome for the patent owner - Plaintiff.

14

Defendants make, use, offer to sell, or sell the Accused Product within the United States or import the Accused Product into the United States, and therefore, such relief is necessary to stop the ongoing irreparable harm to Plaintiff and to prevent Defendants from continuing to benefit from the sales created by their unlawful infringing conduct.

**B.    An Order Preventing the Fraudulent Transfer of Assets Is Appropriate**

In order to preserve Plaintiff's right to an equitable accounting of Defendants' profits from infringing sales, Plaintiff requests an *ex parte* restraining order on those profits. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants almost certainly will abscond with their ill-gotten profits and fraudulently transfer financial assets to oversees accounts before an order is issued. Specifically, upon information and belief, the Defendants in this case hold most of their assets in The People's Republic of China, making it easy to hide or dispose of assets upon learning of the litigation, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Under Section 284 of the Patent Act, Plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer…" 35 U.S.C. § 284. In calculating a reasonable royalty, courts generally analyze the fifteen *Georgia Pacific* factors. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1081 (S.D.N.Y. 1970). When analyzing these factors, courts will often consider the infringer's actual profit from the sale of the infringing product(s). *See, e.g., Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014) (finding that an

15

infringers actual profits earned during the period of infringement can be relevant to the determination of a reasonable royalty); *z4 Techs., Inc. v. Microsoft Corp.*, 2006 U.S. Dist. LEXIS 58374 (E.D. Tex. 2006), aff'd, 507 F.3d 1340 (Fed. Cir. 2007) ("Evidence of an infringer's actual profits are generally admissible when calculating a 'reasonable royalty.' *TWM Mfg. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986)."); *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc*., 219 F.R.D. 135, 142 (N.D. Iowa 2003) ("[A]ctual profits may be relevant to the calculation of a reasonable royalty."). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay all profits realized by Defendants by reason of Defendants' unlawful acts to Plaintiff. Therefore, this Court has the equitable authority to grant Plaintiff's request to freeze Defendants' assets linked to their infringing activity.

Plaintiff has established that it has a likelihood of success on the merits, that it has suffered an immediate and irreparable harm from the Defendants' infringement, and that it will continue to suffer harm unless Defendants' assets are frozen. Therefore, it is proper for the Court to grant Plaintiff's motion to prevent the transfer of Defendants' assets.

## V.    PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* FED. R. CIV. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

16

As demonstrated above, Plaintiff is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of the Accused Products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' Webstores. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only that which is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65. Plaintiff is not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiff's seizure and asset restraint Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

## VI.    SERVICE OF PROCESS BY EMAIL AND PUBLICATION IS WARRANTED IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order allowing service of process by electronically sending the Complaint, this Order, and other relevant

documents via Defendants' Webstore registration emails, any known or discovered e-mail related to the webstore listed in the Complaint. FED. R. CIV. P. 4. Plaintiff will also publish a webpage with documents as well as machine translations to Mandarin Chinese. A link to the published webpage will be provided to Defendants by email during service of process.

Plaintiff submits that, particularly in this day and age and in this matter involving internet merchants who rely on e-mail communication, providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. Further, third party merchant platforms provide their own notice to each individual account holder subject to the TRO.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have not provided names and physical addresses in the public contact information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which the Defendant may be apprised of the pendency of this action.

Plaintiff respectfully submits that an order allowing service of process via e-mail and publication in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a remedy.

Despite not providing reliable physical contact information directly to consumers, the Defendants, as online merchants, must utilize email to communicate with consumers. Moreover, Defendants must maintain contact with their online Webstore host company accounts to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process

18

methods and that such service methods will ensure Defendant is apprised of the action and the nature of the claims therein sufficient to provide due process.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant, like the Defendants here, conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, e.g.*, *Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including service of process by electronic publication and electronic mail); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished); *Tory Burch LLC, et al. v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *MacLean- Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,

19

No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting Rio, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1- 2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").  Plaintiff submits that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002).  As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process.  *Id.* at 1014.  To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement.  There are no other limitations or requirements.  *Id.*  Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served.  *Id.*  As such, this Court may allow Plaintiff to serve the Defendants via email.

20

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of contact information on their Webstores.  Plaintiff, however, has good cause to suspect the Defendants are residents of China.  The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention").  Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention.  *See e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process.  As such, Plaintiff respectfully requests this Court's permission to serve Defendants via email or electronic publication.

## VII.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion.  *Rathmann Grp. v. Tanenbaum*, 889 F.2d

21

787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100*; No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100*; No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Does 1-100*, No. 1:12-cv- 07163 (N.D. Ill. Sept. 14, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1- 100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond); *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 18, 2011) (unpublished) ($10,000 bond); *The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Farouk Sys., Inc. v. Eyou Int'l Trading Co Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. Apr. 21, 2010) (unpublished) ($10,000 bond); *Chanel, Inc. v. Paley*, No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) ($10,000 bond); *Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) (unpublished) ($10,000 bond).

## VIII.   CONCLUSION

Defendants' infringing activities are irreparably harming Plaintiff's business and its consumers.  Without entry of the requested relief, Defendants' sale of the Accused Products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit products have been manufactured by or emanate from Plaintiff, when in fact, they have not.

Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's trademark rights, and to prevent further irreparable harm to Plaintiff and the consuming public, and to preserve the *status quo*.  In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Based upon the foregoing, the Plaintiff respectfully requests: (1) an *ex parte* temporary restraining order preventing Defendants from advertising, offering for sale, selling, distributing, transferring, assigning, destroying, or concealing any of the Accused Products that are in Defendants' possession; (2) an order temporarily disabling the Infringing Webstore listings pending the issuance of a final judgment in this matter; (3) an *ex part*e temporary restraining order preventing the fraudulent transfer of Defendants' assets (4) an order for expedited discovery allowing the Plaintiff to inspect and copy Defendants' records and materials relating to the Accused Products, including those held by third-parties; and, (5) an Order authorization service of process via email under Rule 4(f)(3).

Dated: February 11, 2024                              Respectfully Submitted,

                                                      By:            /s/ Kevin Keener
                                                           Kevin J. Keener
                                                           ARDC #6296898

23

Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 523-2164
kevin.keener@keenerlegal.com